**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| Arlean K. Brown, *as the Personal* | ) | |
| *Representative of Melvin K. Lawhorn*, | ) | Civil Action No.: 3:14-cv-01188-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Brian Elliot; Jim Matthews, *both* | ) | |
| *and in his official capacity as the Sheriff* | ) | |
| *of Kershaw County*; Kershaw County | ) | |
| Sheriff's Office; and Kershaw County, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Arlean K. Brown, as the personal representative of the estate of Melvin K. Lawhorn, brought this action, asserting claims of excessive force and deliberate indifference against the named Defendants, pursuant to 42 U.S.C. § 1983, as well as various state law claims. (ECF No. 1-1 at 2-15.) This matter is now before the court on Defendants' Motion for Summary Judgment (ECF No. 28).

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 D.S.C., the matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial handling. On July 20, 2016, the Magistrate Judge issued a Report and Recommendation, recommending that the court grant Defendants' Motion for Summary Judgment as to the § 1983 claims and remand the state law claims to state court. (ECF No. 43.) Both Plaintiff and Defendants filed objections to the Report and Recommendation (ECF Nos. 47, 48), which the court reviews below. For the reasons that follow, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation, **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment, **DISMISSES** Plaintiff's § 1983 claims, and **REMANDS** Plaintiff's remaining state law claims to state court.

1

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A thorough recitation of the relevant factual and procedural background of this matter is discussed in the Report and Recommendation. (*See* ECF No. 43.) The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual and procedural summation is accurate and incorporates it by reference. The court will only reference herein facts pertinent to the analysis of Defendants' summary judgment motion.

The facts giving rise to Plaintiff's claims are somewhat disputed. On February 28, 2012, Lawhorn was a passenger in a truck driven by Darryl Herbert. Having received information that Lawhorn would be purchasing and transporting a large quantity of cocaine, deputies with Kershaw County Sheriff's Office ("KCSO"), including Defendant Brian Elliott,[1] set up a perimeter along the route they were told he would use. When the truck passed his location, Elliott observed it speeding and crossing the center lane, so he initiated a traffic stop by activating his blue lights.

The truck pulled over, but the parties dispute the characterization of its stopping. In his deposition, Elliott testified that the "truck [was] kind of hesitant stopping" because, after "slow[ing] down," it "[k]ept going, kept going, kept going . . . a hundred yards further than what [it] should've," as there was "plenty [of] space to . . . pull over" when Elliott initiated the stop. (ECF No. 28-2 at 18-19.) Elliott also testified that he "wouldn't say" that the "[h]undred yards" the truck travelled was "unreasonable," but stated that it was "suspicious" because, in his experience, for the "majority [of] times," once a traffic stop is initiated, "it don't take [motorists] a hundred yards to stop. . . . They'll see lights, they'll turn their signal on and pull on the side of the road . . . right then and there." (*Id.* at 20.) In answering why he did not have his weapon drawn

---

[1] Although Plaintiff's complaint refers to the defendant with the surname spelled as "Elliot," it appears that "Elliott" is the correct spelling. (*See* ECF No. 28-2 at 1.)

when he approached the truck, Elliott also testified that the occupants "gave no . . . kind of threat. I mean it was a normal traffic stop." (*Id.* at 25.)

Once the truck pulled over, deputies approached the truck from behind, one deputy on the driver's side and Elliott on the passenger's side. The truck's engine was running, and Herbert's foot remained on the accelerator. When Herbert began talking with the other deputy, Lawhorn pushed Herbert over, moved toward the driver's side, and attempted to shift the truck into drive. Herbert struggled to keep the truck from moving and told Lawhorn to stop, while the deputies told Lawhorn to "freeze" or "stop moving." Elliott then reached inside, leaning into the truck's cab, to grab Lawhorn, and the truck began moving forward.

The parties dispute what happened next. Based on eyewitness testimony, physical evidence, and investigative reports, Defendants assert that Elliott ran alongside the truck as it moved forward, yelling at Lawhorn to stop, and that he lost his footing and was then dragged involuntarily by the truck as upper portions of his body became trapped between the half-open window and door-frame. Based on eyewitness and expert testimony, physical evidence, and investigative reports, Plaintiff asserts that Elliott was never trapped in the truck window, that he was never dragged by the truck, and that "the only way he could remain in contact with the truck after it began moving was if he was intentionally hanging on to the door frame." (ECF No. 36 at 11; *see id.* at 15 ("[T]he Court must assume [Elliott] simply voluntary and willingly chose to run along with/hang on to the truck as it accelerated."); *id.* (describing Elliott as "officer who voluntarily attached himself to a fleeing suspect's vehicle").)

As the truck continued moving forward, Elliott pulled his weapon from his holster and fired one shot at Lawhorn, killing him. The parties again dispute what happened to Elliott after he shot

Lawhorn. According to Defendants, Elliott fell away from the truck, which ran over his leg and foot. According to Plaintiff, the truck did not run over Elliott's leg or foot.

Plaintiff filed suit in state court on February 20, 2014, raising federal claims of excessive force and deliberate indifference, as well as various state claims against Elliott, Kershaw County Sheriff Jim Matthews, in his official and personal capacities, KCSO, and Kershaw County (the "County"). (ECF No. 1-1 at 2-15.) Defendants removed to this court on March 31, 2014, (ECF No. 1) and filed the instant Motion for Summary Judgment on January 29, 2016 (ECF No. 28). Defendants argued that Kershaw County is not a proper defendant as it is separate and unrelated to Kershaw County Sheriff's Office and has no relationship to Matthews or Elliott; that Elliott and Matthews are entitled to qualified immunity from the excessive force claim; that Matthews, KCSO, and the County are entitled to summary judgment on the deliberate indifference claim; and that the court should dispose of the state law claims in their favor. (ECF No. 28-1 at 12-23).

In her Report and Recommendation, the Magistrate Judge first determined that Elliott and Matthews in their official capacities and KCSO are not "persons" within the meaning of § 1983 and that the federal claims against them should be dismissed. (ECF No. 43 at 5-6 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Gulledge v. Smart*, 691 F. Supp. 947, 954-55 (D.S.C. 1988)).) Similarly, the Magistrate Judge determined that, because the County was a separate and distinct entity from KCSO, it could not be held liable for the actions of KCSO or its officers and employees. (*Id.* at 6 n.4, 18-19 (citing *Gulledge*, 691 F. Supp. at 954-55; *Edwards v. Lexington Cnty. Sheriff's Dep't*, 688 S.E.2d 125, 127 n.1 (S.C. 2010)).)

Next, the Magistrate Judge determined, with respect to the excessive force claim against Elliott and Matthews, that no genuine dispute regarding material facts remained and that Elliott and Matthews were entitled to qualified immunity. The Magistrate Judge did not address the

parties' dispute regarding the characterization of the truck's coming to a stop. She merely stated

that, after Elliott initiated the stop, "Herbert, the driver of the truck, 'kept going, kept going, kept

going,' indicating he was hesitant to stop."[2] (*Id.* at 2.) The Magistrate Judge noted the disputes

regarding whether Elliott was trapped and dragged by the truck and whether the truck ran over him

(*id.* at 2, 9-10); however, despite Plaintiff's arguments to the contrary, the Magistrate Judge

concluded that these disputes were immaterial to a resolution of the claims on summary judgment:

> plaintiff points to various discrepancies or inconsistencies in the record to support her position that a dispute exists as to whether Officer Elliott was being dragged by the truck or voluntarily running alongside it. . . . And she attempts to cast doubt on . . . Elliott's believability by pointing out the unlikelihood that someone whose leg and foot had been run over would have such minor injuries. All of these discrepancies, she argues, create a factual dispute precluding summary judgment and application of qualified immunity because, she contends, if . . . Elliott was actually hanging on to the truck rather than being trapped, then the threat to his safety was of his own making and not attributable to Lawhorn. . . . After carefully reviewing the record and applicable law, however, the court concludes, for the following reasons, that even assuming the evidence that the plaintiff relies upon is sufficient for a reasonable jury to accept the plaintiff's theory of events, this dispute of fact is not a material one under controlling law.

(*Id.* at 10-11 (internal citation and footnote omitted).) The Magistrate Judge likewise concluded

that evidence proffered by Plaintiff to show that Elliott failed to follow police procedures or best

practices was immaterial. (*Id.* at 11.)

Canvassing Fourth Circuit case law, the Magistrate Judge concluded that "the officer's

liability must be determined *exclusively* upon an examination and weighing of the information [he]

possessed *immediately prior to and at the very moment* [*he*] *fired the fatal shot.*" (*Id.* at 12 (internal

---

[2] The absence of any mention of a dispute over the issue in the Report and Recommendation is hardly surprising as Plaintiff's Response in Opposition to the Motion to Dismiss does not mention one. (*See* ECF No. 36.) In fact, the Plaintiff's response appears not to dispute Defendants' characterization, reciting in the section of the document labeled "Facts," that "[w]hen . . . Elliott activated his blue light, Herbert 'kept going, kept going, kept going,' which led . . . Elliott to conclude . . . Herbert was 'hesitant to stop.'" (*Id.* at 2 (quoting ECF No. 36-1 at 5).)

quotation mark, brackets, and alteration omitted) (quoting *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991)).) With that limitation in mind, the Magistrate Judge noted that "Elliott's actions at the appropriate moment reveals no material dispute of fact. Even accepting the plaintiff's theory of events as true, all witnesses on the scene agree, and the plaintiff has not identified any evidence in the record to the contrary, that Lawhorn drove the vehicle away *after Elliott was leaning substantially inside it*." (*Id.* at 13.) Thus, the Magistrate Judge determined, "[w]hether Elliott was voluntarily there or trapped matters not, since once Lawhorn put the vehicle in motion with Elliott leaning inside, Lawhorn indisputably presented a substantial threat to Elliott." (*Id.* at 13-14.) Because Elliott's use of deadly force was necessary to prevent an escape and because Elliott had probable cause to believe Lawhorn posed a significant threat, Elliott's use of deadly force did not violate statutory or constitutional rights clearly established at the time of the incident. (*Id.* at 6-8, 14.) Accordingly, the Magistrate Judge concluded that Elliott and Matthews were shielded by qualified immunity. (*Id.* at 17.)

Next, the Magistrate Judge determined that Plaintiff's deliberate indifference claim appeared to seek to establish municipal liability for failure to adequately train. (*Id.* at 18.) She concluded that this claim was not cognizable because none of the defendants were subject to municipal liability under § 1983. (*Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *Goodman v. Harris Cnty.*, 571 F.3d 388 (5th Cir. 2006); *Gulledge*, 691 F. Supp. at 954-55).)

Lastly, the Magistrate Judge, after recommending that the federal law claims be dismissed, also recommended that Plaintiff's state law claims be remanded to the state court, pursuant to 28 U.S.C. § 1367(c). The Magistrate Judge advised the parties that specific written objections were due within 14 days after the Report and Recommendation was served. (*Id.* at 20 (citing 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d)).) Objections were due by August 8, 2016.

On August 2, 2016, Plaintiff filed a motion to extend the time in which to file her objection (ECF No. 45), which the court granted, giving Plaintiff until August 22, 2016, to file her objection (ECF No. 45). On August 22, 2016, both Plaintiff and Defendants filed their objections to the Report and Recommendation. (ECF Nos. 47, 48.)

Plaintiff argues that the Magistrate Judge improperly (1) made findings of fact, including that Elliott was dragged by the truck; (2) viewed the dispute whether Elliott was dragged by the truck as irrelevant; and (3) disregarded evidence that Elliott violated police procedures. (ECF No. 48.) Defendants argue that the Magistrate Judge incorrectly determined that the state law claims should be remanded to state court rather than be disposed by the district court. (ECF No. 47.)

## II. LEGAL STANDARDS AND ANALYSIS

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court reviews *de novo* only those portions of a Magistrate Judge's Report and Recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor.'" *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (per curiam) (brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in her pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Liberty Lobby, Inc.,* 477 U.S. at 252. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

Under the qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, 'taken in the light most favorable to the party asserting the injury, show the officer's

conduct violated a federal right.'" *Tolan*, 134 S. Ct. at 1865 (brackets and ellipsis omitted) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1866. For the second prong, "'the salient question is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged conduct was unconstitutional.'" *Id.* (brackets, alteration, and ellipsis omitted) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). "Courts have discretion to decide the order in which to engage these two prongs." *Id.*

### A. Plaintiff's objections

#### 1. The Magistrate Judge did not make impermissible findings of fact.

Plaintiff argues that the Magistrate Judge impermissibly made findings of fact or else incorrectly stated that certain facts were undisputed. Specifically, Plaintiff claims that the Magistrate Judge found that it was undisputed (a) that truck did not timely stop, which indicated that the driver was hesitant to stop; (b) that Elliott was dragged by the truck; and (c) that the truck ran over Elliott's foot and leg.

*a. Characterization of the truck's stopping.* As discussed above, the parties dispute the characterization of the truck's stopping based on Elliott's deposition testimony. Elliott testified that the truck hesitated: it kept going a hundred yards after it slowed down. He also testified that taking a hundred yards to stop was suspicious as most motorists do not take so long to pull over. In the midst of this testimony, Elliott conceded that he did not think that taking a hundred yards to come to a stop was unreasonable, and, in answering why he did not approach the vehicle with his weapon drawn, he stated that it was a normal traffic stop. In reciting the case's background, the Magistrate Judge made no mention of a dispute over characterization of the truck's stopping;

instead, she stated that the truck kept going after Elliott initiated the stop, which, she said, indicated hesitation. The Report and Recommendation does not mention that Elliott conceded that the length the truck took to stop was not unreasonable or that he called the incident a normal traffic stop.

Plaintiff claims that the Magistrate Judge's viewing the stop's characterization as undisputed was impermissible fact-finding and that, under *Tolan*, genuinely disputed facts, such as this one, should be viewed in her favor. To whatever extent Plaintiff believes that the Magistrate Judge's treatment of the stop's characterization warrants rejection of the Report and Recommendation, the court disagrees. As discussed in footnote 2, *supra*, Plaintiff's response opposing summary judgment not only did not contest Defendants' assertions regarding the stop but also appeared to agree that the truck took longer than usual to stop, suggesting hesitance. If, in response to a motion for summary judgment, "a party fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed for purposes of the motion . . . ." Fed. R. Civ. P. 56(e)(2); *see also S.E.C. v. Fargas*, 557 F. App'x 204, 207 (4th Cir. 2014) (explaining that where nonmovant "did not challenge the facts identified by the [movant] in support of [a summary judgment motion], the court was entitled to treat them as undisputed in considering the motion"). Because Plaintiff did not deny Defendants' assertions regarding the stop, the Magistrate Judge made no impermissible findings by treating the assertions as undisputed.

More importantly, the court will not reject the Magistrate Judge's recommendation on this basis because it is clear from the rest of the Report and Recommendation that the Magistrate Judge did not rely on the characterization of the stop in reaching her decision. The Magistrate Judge clearly stated that she considered the fact that Lawhorn drove the truck away while Elliott was leaning substantially inside it to be the only fact of consequence. Thus, regardless how the truck's

stopping is characterized, the Magistrate Judge's decision would not be altered. Any error in determining that the characterization was undisputed necessarily would be harmless.

b. *Elliott being dragged by the truck.* Plaintiff, quoting the Report and Recommendation, argues that the Magistrate Judge impermissibly resolved a factual dispute by finding that "'Elliott lost his footing and was being dragged involuntarily by the truck.'" (ECF No. 48 at 5 (quoting ECF No. 45 at 3)). Plaintiff presents a well-reasoned and thorough dissertation on why it would be inappropriate for the court, through referral to the Magistrate Judge, to resolve a factual dispute at the summary judgment stage and find that Elliott was dragged. The problem is that the argument is misplaced: the Magistrate Judge made no such finding.

The Magistrate Judge was well-aware that whether Elliott was dragged was hotly disputed. The four-sentence paragraph from which Plaintiff quotes begins by stating that "[P]laintiff disputes Elliott's version of the following events." (ECF No. 48 at 3.) A footnote appends the very sentence Plaintiff quotes, and it states that "plaintiff disputes [Elliott's] testimony [regarding his losing his footing and being dragged involuntarily] and has presented expert testimony purporting to refute it" (*Id.* at 3 n.3.) The Magistrate Judge also specifically noted that "[P]laintiff points to various discrepancies or inconsistencies in the record to support her position that a dispute exists as to whether . . . Elliott was being dragged by the truck or voluntarily running alongside it." (*Id.* at 9.) After itemizing the discrepancies and thoroughly noting that the issue was disputed, the Magistrate Judge thrice stated that she assumed, for purposes of summary judgment, that Plaintiff's version of the facts—that Elliott was not dragged—was true. (*See id.* at 11 & n.6, 13.) Reading the Report and Recommendation, it is abundantly clear that the Magistrate Judge assumed, consistent with Plaintiff's theory of the facts, that Elliott was not dragged, but, instead, ran alongside, and attached himself to, the vehicle. It is also clear that the Magistrate Judge viewed the dispute as to whether

Elliott was dragged by the vehicle as immaterial. She explained that, even if Elliott was not dragged, the outcome of the motion for summary judgment was dictated by facts that were undisputed:

> Even accepting the plaintiff's theory of events as true, all witnesses on the scene agree, and the plaintiff has not identified any evidence in the record to the contrary, that Lawhorn drove the vehicle away *after Elliott was leaning substantially inside it.* Whether Elliott was voluntarily there or trapped matters not, since once Lawhorn put the vehicle in motion with Elliott leaning inside, Lawhorn indisputably presented a substantial threat to Elliott.

(*Id.* at 13-14.) In the Magistrate Judge's view, all that mattered was that '[a]ll of the evidence in the record is consistent that Lawhorn placed Elliott in danger by recklessly pushing the driver aside and then placing the truck in motion while Elliott was leaning in through the passenger window." (*Id.* at 14.) Thus, a finding whether Elliott was dragged was unnecessary, but, even if it were necessary, the Magistrate Judge correctly inferred from the facts a finding favorable to Plaintiff.

*c. Elliott being run over by the truck.* Plaintiff contends that the Magistrate Judge impermissibly found that Elliott was run over by the truck despite the parties' dispute regarding that factual issue. This argument merits the same treatment as the last argument: the Magistrate Judge made no such finding.

The Magistrate Judge noted that Elliott's account of being run over was disputed (*id.* at 3, 10), but determined that whether he was run over was immaterial. The Magistrate Judge expressly stated that, to the extent Plaintiff disputed Elliott's assertion that he was run over in order to impeach Elliott's credibility on his assertion that he was dragged, the dispute is immaterial because whether he was dragged is immaterial. (*Id.* 10-11.) The Magistrate Judge also implicitly determined that whether Elliott was run over after he shot Lawhorn is immaterial to determining whether his use of force was excessive. (*See id.* at 12 ("'The officer's liability must be determined *exclusively* upon an examination and weighing of the information [he] possessed *immediately prior*

*to and at the very moment* [*he*] *fired the fatal shot.*'" (internal quotation marks, brackets, and alteration omitted) (quoting *Greenidge*, 927 F.2d at 792).)

In sum, because the Magistrate Judge either never made the factual findings of which Plaintiff complains or did not rely on them in reaching her conclusions, the court overrules Plaintiff's objections regarding the Magistrate Judge's findings.

> *2. The Magistrate Judge correctly decided that whether Elliott was dragged is immaterial.*

The Magistrate Judge concluded that, under the state of the law at the time, it would not be clear to a reasonable officer that Elliott's using deadly force against Lawhorn would have been unlawful. In reaching this conclusion, the Magistrate Judge made two determinations. First, she determined that it was unnecessary to resolve the factual dispute whether Elliott was dragged by the truck and, instead, assumed Plaintiff's version of events—that, although Elliott was leaning substantially into the truck's cab through the window when Lawhorn drove forward, Elliott was not trapped or dragged by the truck—were true for purposes of deciding the summary judgment motion. Second, after thoroughly canvassing controlling precedent, she determined that it would not be clear to a reasonable officer that Elliott lacked probable cause to believe that Lawhorn posed a significant threat to him, even assuming Plaintiff's version of events to be true. Because it would not be clear to a reasonable officer that Elliott's actions were unlawful, the right alleged to have been violated was not clearly established, and, thus, the Magistrate Judge reasoned, Elliott was entitled to qualified immunity.

> *a. Resolving factual dispute.* Plaintiff objects to both of the Magistrate Judge's determinations. First, Plaintiff argues that resolution of the factual dispute whether Elliott was dragged by the truck is a necessary prerequisite to resolving the question of qualified immunity. (*See* ECF No. 48 at 18-22.) Elliott testified that his being dragged caused him to feel threatened

(*see* ECF No. 48-1 at 19-20), and Plaintiff asserts that this was the sole reason Elliott offered for feeling threatened. In Plaintiff's view, qualified immunity analysis begins with determining what Elliott reasonably perceived—whether he perceived he was being dragged and whether that perception was reasonable—as it is impossible to determine whether a reasonable officer in Elliott's circumstances would have had the same perceptions and would have responded as Elliott did. For support, Plaintiff cites *Moody v. City of Newport News*, No. 4:14cv99, ___ F. Supp. ___, 2016 WL 3453652, (E.D. Va. July 19, 2016), which states that, "[i]n determining whether an officer's use of force is objectively reasonable, the focus 'is on what the police officer reasonably perceived at the time that he acted and whether a reasonable officer armed with the same information, would have had the same perception and have acted in like fashion.'" *Moody*, 2016 WL 3453652, at *11 (quoting *Lee v. City of Richmond*, 100 F. Supp. 3d 528, 541 (E.D. Va. 2015)). The court rejects this argument.

As a factual matter, Plaintiff's assertion that Elliott stated that his being dragged was the sole cause for his feeling threatened is incorrect. Elliott testified that, at the time he shot Lawhorn, he "fear[ed] that [his] life was in danger," and, when asked whether this fear was caused by his being dragged, he replied that it was. (ECF No. 48-1 at 19.) When asked whether "the only fear [he] had was the fear of injury or death by being dragged," Elliott replied, "[y]es, and getting run—getting completely run over." (*Id.*) Thus, contrary to Plaintiff's assertions, Elliott stated that he felt threatened by Lawhorn not only because he was being dragged but also because he was in danger of being run over. Thus, even accepting Plaintiff's argument that the qualified immunity analysis must begin by determining what Elliott reasonably perceived, this includes an assessment of whether Elliott reasonably believed he was being dragged *and* whether he reasonably believed he was in danger of being run over.

More importantly, as a legal matter, the court concludes that Plaintiff's reliance on *Moody* is misplaced. *Moody* states that the inquiry begins by determining what the officer reasonably perceived at the time he acted, but nothing in *Moody* suggests that a court, for purposes of summary judgment, cannot assess the officer's perceptions based on facts that, if disputed, are assumed in the plaintiff's favor. Here, Elliott's perceptions and the reasonableness of those perceptions were assessed by the Magistrate Judge under the assumption that Elliott was not dragged by the truck, and, even under the assumption that Elliott could not reasonably perceive that he was being dragged, the Magistrate Judge determined that a reasonable officer, operating under no perception of being dragged, would have acted in the same fashion that Elliott did. *See Moody*, 2016 WL 3453652, at *11 (concluding that officer's conduct "was objectively reasonable because another officer, armed with the same information" would have engaged in same conduct). The Magistrate Judge gave Plaintiff all that *Moody* calls for: a determination whether Elliott reasonably perceived that he was being dragged. By assuming Plaintiff's version of events (that Elliott was not dragged) was true and that Elliott did not perceive that he was being dragged, the Magistrate Judge employed *Moody*'s analysis correctly in the context of a summary judgment motion. Plaintiff may disagree that, absent the perception of being dragged, no reasonable officer would have used deadly force as Elliott did, *see infra*, but that does not alter the fact that the Magistrate Judge accounted for the evidence that Elliott could not reasonably perceive that he was being dragged by assuming that factual dispute in Plaintiff's favor, a technique commonly employed at the summary judgment stage.

Plaintiff also relies on *Rainey v. Conerly*, 973 F.2d 321 (4th Cir. 1992). In *Rainey*, a factual dispute existed regarding how much force the officer used against the plaintiff. 973 F.2d at 324. If the plaintiff's version of events was believed, then, based on the state of the law at the time, "[the

officer]'s actions could not, by any reasonable officer, be considered to be within the bounds of the law." *Id.* Despite this factual dispute, the defendant officer sought summary judgment on his claim of qualified immunity based on *Gooden v. Howard Cnty.*, 954 F.2d 960 (4th Cir. 1992) (en banc). In *Gooden*, the Fourth Circuit said that "[i]n the absence of a genuine dispute as to the reasonableness of the officers' perceptions, the issue of qualified immunity is ripe for summary judgment." 954 F.2d at 965-66. The district court denied the officer's motion for summary judgment, and the Fourth Circuit affirmed. *Rainey*, 973 F.2d at 326. The *Rainey* court distinguished *Gooden* because the officer in *Rainey* "did not claim . . . that he operated under a mistaken, but reasonable, perception of the facts" and thus "a determination of what actually happened is absolutely necessary to decide whether [the officer] could reasonably have believed that his actions were lawful." *Id.* at 324. Plaintiff claims that *Rainey*'s exception to *Gooden* should apply here because the issue is not whether Elliott made a reasonable mistake but, rather, whether Plaintiff's evidence that Elliott was not dragged should be believed.

The court again concludes that Plaintiff's reliance on *Rainey* is misplaced. Whatever else it stands for, *Rainey* does not hold that a court must abstain from entering summary judgment when there is dispute over a fact that is immaterial. *Rainey* states that resolution of the dispute over the amount of force used by the officer was necessary because, if that dispute were resolved in plaintiff's favor, no reasonable officer would have viewed the amount of force as lawful. Thus, *Rainey*'s requirement that factual disputes be resolved applies only where resolution of the disputed fact is necessary to determine whether reasonable officers would view the conduct as unlawful. *Rainey* does not apply where, if the factual dispute is resolved in the plaintiff's favor, reasonable officers would not view the defendant officer's conduct as unlawful. *See Zoroastrian Ctr. & Darb-E-Mahr v. Rustam Guiv Found.*, 822 F.3d 739, 751-52 (4th Cir. 2016) (explaining

that *Rainey* does not apply where resolution of disputed fact would not affect analysis); *Sigman v. Town of Chapel Hill*, 161 F.3d 782, 792 (4th Cir. 1998) (Michael, J., dissenting) (stating that *Rainey* should apply because plaintiff's version of events, "*if true*, undermine[s] the police officers' claim to qualified immunity" (emphasis added)); *Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 179-80 (4th Cir. 1998) (noting that *Rainey* merely applies the general rule that summary judgment is inappropriate when dispute is over a material fact and applying it to facts of case because, if plaintiff's version was true, then "[defendant]'s actions were objectively unreasonable" under "settled law"); *Trigo v. Moore*, No. 92-1516, 995 F.2d 1064, at *2 (4th Cir. 1993) (unpublished table decision) (applying *Rainey* exception where "[a] reasonable jury could find for [plaintiff] if it believed his version of certain crucial facts"). In other words, *Rainey* presents no bar to summary judgment when, viewing the disputed fact in the nonmovant plaintiff's favor, the court still concludes that the movant officer is entitled to qualified immunity as a matter of law. This is simply a roundabout way of saying that a court may properly determine that a fact, even though disputed, if not material, need not be resolved in order to dispose of a claim on summary judgment. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *Liberty Lobby, Inc.,* 477 U.S. at 248 (a fact is material if it "might affect the outcome of the suit under the governing law"). Here, the Magistrate Judge concluded that, even assuming Plaintiff's version of events was true, Elliott was still entitled to qualified immunity. Thus, *Rainey* is inapplicable.

     *b. Clearly established law.* Plaintiff also objects to the Magistrate Judge's conclusion that it would not be clear to a reasonable officer that Elliott lacked probable cause to believe that Lawhorn posed a significant threat to him. Plaintiff does not challenge the Magistrate Judge's basic

legal premise that "'the officer's liability must be determined *exclusively* upon an examination and weighing of the information [he] possessed *immediately prior to and at the very moment* [*he*] *fired the fatal shot*'" (ECF No. 43 at 12 (internal quotation marks, brackets, and alteration omitted) (quoting *Greenidge*, 927 F.2d at 792)), and agrees that the *Greenidge* standard applies. (*See* ECF No. 48 at 22.) Instead, Plaintiff argues that the Magistrate Judge's assessment fails to adequately account for the inherent limitations of a vehicle as a weapon and the spatial location of Elliott in relation to the truck. (*Id.*) Plaintiff rightly contends that a suspect's possession of a deadly weapon alone does not justify an officer's use of deadly force (*id.* (citing *Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013)) and that a court must consider the limitations of the weapon in determining whether it poses a significant threat to the officer (*id.* at 22-23 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1999); *Cooper*, 735 F.3d at 159.)). Thus, when appraising the threat posed by a suspect alleged to have used a vehicle as a weapon, a court should consider the vehicle's range of motion and the officer's location in relation to the vehicle. (*Id.*)

The court agrees with Plaintiff and notes that the Magistrate Judge undertook the considerations the Plaintiff sets forth. The Magistrate Judge canvassed the case law and found no case that exactly matched the relevant circumstances: an officer substantially leaning into the cab of a vehicle when a suspect begins driving forward, running alongside the vehicle, and attaching himself to the vehicle. Instead, the Magistrate Judge relied on a number of cases presenting similar, albeit not exact, circumstances. (*See* ECF No. 43 at 13-17 (citing *Waterman v. Batton*, 393 F.3d 471 (4th Cir. 2005); *Pittman v. Nelms*, 87 F.3d 116 (4th Cir. 1996); *Drewitt v. Pratt*, 999 F.2d 774 (4th Cir. 1993); *Moody*, 2016 WL 3453652; *Willis v. Oakes*, 493 F. Supp. 2d 776 (W.D. Va. 2007)).) Reviewing each of these cases, the court finds that the Magistrate Judge correctly concluded that they support her conclusion that it would not be clear to a reasonable officer that

using deadly force in the circumstances that are assumed to have been faced by Elliott was unlawful.

Plaintiff contends, however, that the Magistrate Judge erred by relying on these cases. In her estimation, after assessing the case law, "[t]he fact that . . . Elliott was beside [the] truck and not in front of it is a 'crucial' factor in this case." (ECF No. 48 at 23.) Plaintiff explains that all the cases relied upon by the Magistrate Judge are distinguishable from the instant case because the officers in them were either in the path of oncoming vehicles or else were trapped in the windows of moving vehicles. (*See id.* at 23-25.) She argues that the Magistrate Judge erred by discounting the more analogous case that she cited, *Krein v. Price*, 596 F. App'x 184 (4th Cir. 2014). (*Id.* at 23-26.) *Krein* involved an officer who shot an escaping driver through a vehicle's window after the officer had stepped out of the path of the vehicle and was no longer in danger of being hit. 596 F. App'x at 188-90. The Fourth Circuit ruled that summary judgment in the officer's favor was inappropriate because, under these circumstances, "a reasonable officer would have realized that deadly force was not necessary to protect himself." *Id.* Plaintiff argues that *Krein* is the most closely analogous case to the instant one because, unlike in the cases cited by the Magistrate Judge, "Elliott was never in a position to be hit . . . because he was never in front of [the truck]." (ECF No. 48 at 27.)

The court agrees with the Magistrate Judge that *Krein* is not more analogous to the instant case, and, instead, it is less so. (See ECF No. 43 at 15 n.10.) As an initial matter, Plaintiff's assertion that Elliott was never in the path of the truck is factually incorrect. The Magistrate Judge determined that it is undisputed that Elliott was substantially leaning inside the cab of the truck when Lawhorn drove it forward. Plaintiff has not objected to this determination, and, viewing the record on file, the court concludes that it is correct. At the very least, this means that a portion of

Elliott was in the direct path of a portion of the truck. Regardless of that distinction, *Krein* is also distinguishable because standing beside a vehicle as it passes by is simply not the same as being partially inside a vehicle and being attached to a vehicle as it drives down the road. *Krein* said that a reasonable officer would not find the former position to pose a significant threat, but says nothing about the latter position. The court agrees with the Magistrate Judge that a reasonable officer who found himself in the latter position would not conclude that he is free from significant danger as an officer who found himself in the former position.

Moreover, Plaintiff's argument invites the kind of armchair second-guessing that precedent proscribes. *See Graham*, 490 U.S. at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."); *Elliott*, 99 F.3d at 642 ("The court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection."). The parsing required to determine whether Elliott was more like *Krein*'s officer who was safely out of the path of fleeing suspect's vehicle or *Drewitt*'s officer who found himself hanging onto the hood of the vehicle after its driver had tried to run him down is exactly the type of consideration for which Elliott lacked time and tranquility to deliberate. Even with "the luxury of armchair reflection," the parsing required to determine in what line of cases Elliott fits precludes the court from concluding that he violated a clearly established right. *See Wiley v. Dorey*, 14 F.3d 993, 995 (4th Cir. 1994) ("[I]f there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.").

Accordingly, the court overrules Plaintiff's objection. The court concludes that the Magistrate Judge correctly determined that whether Elliott was dragged was immaterial to the qualified immunity defense and that it would not be clear to a reasonable officer that Elliott lacked probable cause to believe that Lawhorn posed a significant threat to him. Therefore, the court agrees that the Defendants are entitled to qualified immunity on the excessive force claim and that the claim should be dismissed.

   *3. The Magistrate Judge correctly disregarded evidence of violation of police procedure.*

Plaintiff objects that the Magistrate Judge erred by disregarding evidence that Elliott violated police procedures and best practices in the time leading up to the shooting. Relying on Fourth Circuit case law, the Magistrate Judge concluded that evidence that Elliott violated procedures prior to the shooting was irrelevant. (*See* ECF No. 43 at 14 & n,8 (citing *Drewitt*, 999 F.2d at 780 ("[T]he failure of [the officer] to display his badge when announcing himself as a police officer and demanding [plaintiff] to stop his vehicle is irrelevant to the issue of whether at the moment of the shooting [the officer] had probable cause to believe that [plaintiff] posed a threat of death or serious bodily harm to him."); *Greenidge*, 927 F.2d at 791-92 (upholding exclusion of "evidence of the officer's alleged violation of police procedures immediately preceding the arrest"); *Gandy v. Robey*, No. 11-2248, 520 F. App'x 134 (4th Cir. 2013) ("A police officer's pre-seizure conduct, regardless of whether it was ill-advised or violative of law enforcement protocol, is generally not relevant for purposes of an excessive force claim under the Fourth Amendment which looks only to the moment force is used.")

The court agrees with the Magistrate Judge that the case law demonstrates that whether Elliott violated police procedures prior to the shooting is immaterial for deciding the qualified

immunity defense. Plaintiff's attempts to sidestep the case law are unpersuasive. Accordingly, the objection is overruled.

Plaintiff does not object to the Magistrate Judge's conclusions that Elliott and Matthews in their official capacities, KSCO, and the County should be dismissed with respect to the federal claims because they could not be held liable under § 1983. Plaintiff also does not object that the deliberate indifference claim should be dismissed as to all Defendants because none of them were subject to municipal liability under § 1983. Because the court discerns no clear error in these determinations, *see Diamond*, 416 F.3d at 315 (stating standard), the court accepts them.

## B. Defendants' objection

The Magistrate Judge recommended that Plaintiff's state law claims be remanded to the state court. Although Defendants filed an objection to this recommendation, their objection is untimely. Plaintiff filed a motion to extend the time in which to file her objections and was given until August 22, 2016, to file them. Defendants, on the other hand, sought no extension of time, and they filed their objection after the period for doing so had expired. Because the objection is untimely, the court reviews it for clear error. *Id.*

The court discerns no clear error. Defendants cite only one authority in their objection, which, they candidly admit, stands for a proposition that supports the Magistrate Judge's determination. (*See* ECF No. 47 at 2 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)).) In general, when a district court dismisses all federal law claims and only state law claims remain, it is best for the court to remand the state law claims to state court. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 351 (1988); *Arrington v. City of Raleigh,* 369 F. App'x 420, 423 (4th Cir. 2010); *Waybright v. Frederick Cnty.,* 528 F.3d 199, 209 (4th Cir. 2008). The objection is overruled.

### III. CONCLUSION

Upon careful consideration of the entire record, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 43) incorporating it by reference. Defendants' Motion for Summary Judgement (ECF No. 28) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims under 42 U.S.C. § 1983 (ECF No. 1-1 at ¶¶ 45-57) are **DISMISSED**, and the remaining claims are **REMANDED** to state court.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Court Judge

September 27, 2016
Columbia, South Carolina